UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                              Chapter 13

PAMELA RODGERS,                                    Case No. 09-46865

                        Debtor.
-------------------------------------------------------------x

### OBJECTION TO EXTENSION OF THE AUTOMATIC STAY

       Frank Tenteromano and Emideo Tenteromano (the "Lenders"), as and for their objection to the motion of Pamela Rodgers for an order imposing the automatic stay upon the Lenders pursuant to section 362(c)(3)(B) of the Bankruptcy Code, respectfully represent as follows:

       1.     The Lenders hold a foreclosure judgement against the Debtor in the amount of $620,159.42 as of the August 11, 2009 petition date herein, plus accruing interest, costs, and attorneys fees, based upon the Debtor's default on a note and mortgage that matured five years ago, secured by the real property located at 33 Vanderbilt Avenue, Brooklyn, New York (the "Property"). A copy of the Judgment, and the Lenders' calculation of the amount due is annexed hereto.

       2.     The first foreclosure sale was scheduled for June 3, 2009. The Debtor stayed that sale by filing her first Chapter 13 petition on June 3, 2009. That petition was dismissed in July based upon the Debtor's failure to file schedules. At the time of the dismissal

of the Debtor's first petition, the Chapter 13 Trustee also had a dismissal motion pending based upon the Debtor's failure to appear at her 341 meeting, her failure to make pre-confirmation plan payments and her failure to file a plan, in addition to the Debtor's failure to file schedules.

3.      In attempt to stay the second foreclosure sale scheduled for September 24, 2009, the Debtor filed this case, her second Chapter 13 petition.

4.      Since this is the Debtor's second bankruptcy filing within one year, the automatic stay expires 30 days after the August 11, 2009 petition date, absent an order of this Court under section 362(c)(3)(B) of the Bankruptcy Code, based upon a finding that the second petition was filed in good faith.

5.      In the first instance, however, the second petition is presumed not to have been filed in good faith under section 362(c)(3)(C)  because the first case was dismissed for failure to file required documents without a substantial excuse, other than inadvertence and/or negligence.  Thus, as a condition to relief under section 362(c)(3)(C), the Debtor must show by "clear and convincing evidence" that the second petition was filed in good faith.

6.      In support of her good faith allegation, the Debtor states in her supporting affidavit that she filed her petition with the intention of confirming a plan that would pay the Lenders and the other secured creditor monthly interest only payments totaling approximately

$8,500 per month, with the principal to be paid in five years by way of a balloon payment. As will be shown below, the Debtor has failed to carry her "good faith" burden.

7.      It must be noted at the outset that the Debtor scheduled the Lenders' claim in the $400,000 principal amount of the note, disregarding the Supreme Court Judgment and Referee's Report, pursuant to which the Lenders' claim is $620,159.42 as of the August 11, 2009 petition date. In addition to the Lenders' claim, there is a second mortgage which the Debtor scheduled in the amount of $425,000. Putting aside the question of whether the Debtor understated the second mortgage, the grand total of the first and second mortgages is $1,045,159.42 (620,159.42 plus 425,000). Accordingly, the Debtor's total secured debt exceeds the $1,010,650 threshold for Chapter 13 making her ineligible to be a Chapter 13 debtor, let alone to confirm a Chapter 13 plan.

8.      The Debtor's good faith allegation is contradicted by a additional facts set forth in her schedules.   Indeed, the Debtor's schedules project after tax income of only about $6,000 per month which is only half of the approximate $12,000 per month of income she projects that she needs to carry the plan, (assuming *arguendo* she is eligible to file a Chapter 13 plan). And even at that, she makes no provision for the payment of her $100,000 student loan in her plan. She did not even include that claim in her mailing matrix.

9.      Furthermore, the Debtor has not established any legal basis for extending for five years the Lenders' mortgage that matured by its own terms five years ago, and which has since been superseded by a foreclosure judgment.

10.      Against this background, the test for whether a bankruptcy case is filed in good faith is set forth in *In re C-TC 9th Avenue Partnership*, 113 F. 3d 1304, 1310 (2d. Circuit 1997). In *C-TC*, the Second Circuit identified a number of factors that support a finding that a petition was filed in bad faith, as follows: the Debtor has only one asset, the Debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors, the Debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt, the Debtor's financial condition is, in essence, a two-party dispute between the Debtor and secured creditors which can be resolved in the pending state foreclosure action, the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights, the Debtor has little or no cash flow, the Debtor can't meet current expenses including the payment of personal property and real estate taxes, and the Debtor has no employees.

11.      Taking all of the aforementioned factors in tandem, the bankruptcy petition here presents a classic bad faith filing. First, the Debtor's real property is her only asset of material value. Second, the Debtor has no unsecured claims except her student loans, third, the Debtor's single asset is the subject of a foreclosure action, fourth, the Debtor's financial problems arise solely from the disputes between herself and her secured creditors, fifth, those disputes can

be resolved through the State Court proceedings, sixth, the timing of the filings indicates that the Debtor's intention was only to stop her Lenders from foreclosing on their liens and was not motivated by any serious intent to reorganize, and seventh, the Debtor's projections indicate an inability to service the outstanding mortgages, and eighth, the Debtor has no employees.

12.     In summary, the Lenders respectfully submits that the Debtor has failed to show by clear and convincing evidence that this case was filed in good faith, and that she has the will and the means to propose a confirmable plan of reorganization for the benefit of her creditors.  Significantly, she has alleged no change in circumstances since her prior bankruptcy filing and there is nothing in this case to suggest that she can continue as a Chapter 13 debtor or confirm a feasible plan under Chapter 13 or Chapter 11 of the Bankruptcy Code.  The Debtor, cannot, therefore, establish cause to extend the automatic stay.

WHEREFORE, the Lenders respectfully request that Bankruptcy Court deny the Debtor's motion, and grant such other further and different relief as may be just and proper.

Dated: New York, New York
September 1, 2009

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for the Lenders

By: s/ Mark Frankel
489 Fifth Avenue
New York, New York  10017
(212) 593-1100

At Part 12 of the Supreme Court of the State
of New York, held in and for the County of
Kings at the Courthouse, at Civic Center, 360
Adams Street, Brooklyn, New York on the
30ᵗʰ day of March 2009

P R E S E N T:

## HON. GERARD H. ROSENBERG

JUSTICE.

-------------------------------------X

EMIDEO TENTEROMANO and
FRANK TENTEROMANO ,

        Plaintiff,

- against –

Index No. 463/2007

PAMELA RODGERS, NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD,
and NEW YORK CITY PARKING
VIOLATIONS BUREAU

JUDGMENT OF
FORECLOSURE AND SALE

        Defendant

-------------------------------------X

    On the Summons and Complaint, Amended Complaint, and Notice of Pendency of action

duly filed in this action on the January 5, 2007, The Order of Reference dated February 26, 2008, and

all proceedings thereon, and on reading and filing the affirmation of DAN M. RICE, Esq., counsel

for plaintiff, dated May 29, 2008 from which it appears that each of the defendants herein have been

duly served with the Summons and Complaint and Amended Complaint, in this action, or have

voluntarily appeared personally or by their respective attorneys, and stating that more than the legally

required number of days have elapsed since said defendants were so served and/or appeared; and that

none of the defendants had served any answer to said Amended Complaint, nor had their time to do

so been extended; and that the Amended Complaint herein and the Notice of Pendency containing all

1

the particulars required to be stated therein was duly filed in the Office of the Clerk of the County of Kings on January 5, 2007, and has not been amended to add new parties or to embrace real property not described in the original and amended complaint, and a Referee having been duly appointed to compute the amount due to the plaintiff upon the note and mortgage set forth in the Complaint and the examine and report whether the mortgage premises can be sold in parcels,

AND, on reading the report of ALAN J. FIRESTONE, ESQ., the Referee named in said Order of Reference, by which Report dated the 13th day of May, 2008, attached hereto, it appears that the sum of $536,491.88 was due as of May 1, 2008, and that the mortgage premises should be sold in one parcel,

NOW, upon proof of due notice of this application upon all parties who had not waived the same, and upon proof of service of the Order of Reference as provided therein,

ON MOTION of THE RICE LAW FIRM, PLLC attorneys for the plaintiffs it is

ORDEDERD, that the motion is granted, and it is further    ORDERED, ~~adjudged and deereed,~~ THAT THE SAID Report of ALAN J. FIRESTONE, Esq dated May 13, 2008 be, and the same is hereby ~~in all respects~~ ratified and confirmed; and it is *to the extent provided for herein*

ORDERED, ADJUDGED AND DECREED, that the above described-mortgaged premises or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale and the costs of this action as provided by the Real Property Actions and Proceedings Law be sold, in one parcel, at public auction in Room ~~261~~ 274 of Kings County Supreme Court, 360 Adams Street, Brooklyn, New York 11201, on a Thursday afternoon at 3:00 p.m., by and under the direction of ALAN J. FIRESTONE, ESQ. who is hereby appointed Referee for the purpose, that the said Referee shall set the date of sale and give public notice of the time and place of sale accordance with RPAPL 231 in

2

*Brooklyn Daily Eagle* and it is further

ORDERED, ADJUDGED AND DECREED that said Referee shall accept at the sale the highest bid offered by a bidder, who shall be identified upon the court record, and shall require that such successful bidder immediately pay to the Referee, ten per cent of the sum bid and shall execute the Terms of Sale for t5he purchase of the premises, unless such successful bidder is the plaintiff herein, in which case, no deposit against the purchase price shall be required, and it is further

ORDERED, ADJUDGED AND DECREED that in the event that the first successful bidder fails to immediately pay the ten per cent as provided herein or fails to execute the Terms of Sale immediately following the bidding upon the subject property, the property shall thereafter immediately, on the same day, be reoffered at auction and it is further

ORDERED, ADJUDGED AND DECREED that the closing of title shall take place at the Office of the Referee or at such other location as the Referee shall determine within forty-five days after such sale unless otherwise stipulated by all parties. The Referee shall transfer title only to the successful bidder at the auction. Any delay or adjournment of the closing date beyond forty-five days may be stipulated among the parties, with the Referee's consent, up to ninety days, from the date of sale, but any adjournment beyond ninety days may be set only with the approval of this Court, and it is further

ORDERED, ADJUDGED AND DECREED that Referee deposit all funds received pursuant to this Order in his/her name as Referee in Referee's I.O.L.A. account maintained for legal clients at a bank within the City of New York. or in

3

_SIGNATURE_ _____ Bank). And it is further

ORDERED, ADJUDGED AND DECREED that said Referee on receiving the proceeds of such sale shall forwith pay therefrom:

FIRST:The statutory fees and commissions of said Referee pursuant to CPLR §8003(b) which shall not exceed $500.00 unless the sale price (the amount of the accepted bid) exceeds $50,000. In the event the sales price exceeds fifty thousand dollars and additional compensation (including commissions) in excess of $500 is sought pursuant to CPLR §8003(b), and if no surplus monies are produced by the sale, the parties may present a stipulation, signed by the Referee and all parties appearing, agreeing to a stated sum, to be so-ordered by the Court. Where surplus monies will be available following distribution of sums as provided herein, or where the parties are unable to agree to the Referee's proper compensation under CPLR § 8003(b), application shall be made to the Court on notice to all parties known to be entitled to claim against any surplus monies, including the defaulting owner of the equity of redemption. Such application shall be promptly submitted to the Court within five days of the transfer of the deed and prior to filing the Report of Sale. The five day period for the payment of surplus money into the Court as set forth in RPAPL § 1354(4), and the thirty day period set forth in RPAPL § 1355 FOR THE FILING OF THE Report of Sale shall be deemed extended pending the decision of the Court regarding such application

In the event a scheduled sale is cancelled or postponed, pursuant to CPLR § 8003(a), plaintiff shall compensate the Referee in the sum of $250.00 for each adjournment or cancellation unless the Referee has requested the delay. Such compensation may be recouped from the proceeds of sale as a cost to plaintiff. This Order shall constitute the necessary prior authorization for compensation as set forth herein.

4

750

No compensation in excess of $~~$550~~, including compensation authorized pursuant to CPLR § 8003(a) for computation of the sum due to plaintiff, may be accepted by the Referee without Court approval and compliance with the filing provisions of Section 36.4 of the Rules of the Chief Judge.

SECOND: The expenses of the sale, including the cost of advertising expenses as shown on the bills presented and certified by said Referee to be correct, copies of which shall be annexed to the Report of Sale.

THIRD: Pursuant to Real Property and Proceedings Law §1354, in accordance with their priority according to law, taxes assessments, sewer rents, water rates and any charges placed upon the property by a city agency which have priority over the foreclosed mortgage, which are liens on the premises at the time of sale with such interest or penalties which may have lawfully accrued thereon to date of payment.

FOURTH Said Referee shall then pay to the plaintiff or

its attorney the sum of $ _____ 1,240.00 for costs and disbursements in this action, to be taxed by the Clerk and inserted herein, with interest from the date hereof, together with an additional allowance of $ 300 _____ hereby awarded to the plaintiff in addition to costs with interest thereon from the date hereof; and also the sum of $536,491.88 the said amount so reported due as aforesaid, together with interest together with interest thereon pursuant to the terms of the Note from May 1, 2008, the date the interest was calculated in said Report, to the date of entry of this Order, and thereafter at the statutory post judgment rate to the date of transfer of title or such much thereof as the purchase money of the mortgaged premises will pay of the same, together with $ _____ 1,500 _____ hereby awarded to the plaintiff as reasonable legal fees, together with any advances as provided for in the note and mortgage which plaintiff may have made for taxes,

5

insurance, principal and interest any other charges due to prior mortgages or to maintain the premise pending the consummation of this foreclosure sale, not previously included in the computation, upon presentment to the Referee of receipts for said expenditures, all together with interest thereon pursuant to the note and mortgage as above provided. Copies of receipts shall be annexed to the Referee's Report of Sale. Plaintiff shall timely move to confirm the Referee's Report of Sale pursuant to RPAPL ¶ 1355. It is further

ORDERED, ADJUDGED AND DECREED that in case the plaintiff be purchaser of said mortgaged premises at said sale, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver only to plaintiff a deed of the premises sold upon the payment to said Referee of the sum awarded to him or her under the above provisions marked "FIRST", "SECOND" and "THIRD" if such expenses were paid by the Referee, or in lieu of payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing payment thereof. The balance of the amount bid, after deducting therefrom the aforementioned payments to the Referee for compensation and expenses, taxes, assessments, sewer rents, water rents, and priority liens of a city agency, shall be allowed to the plaintiff and applied by said Referee upon the amounts due the Plaintiff as specified in the items marked "FOURTH". If upon so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to said Referee, upon delivery to plaintiff of said Referee's deed, the amount of such surplus (which shall be applied by the Referee, upon motion pursuant to RPAPL §1351(3) and proof satisfactory to the Referee of the sums due thereon, to any subordinate mortgage duly recorded against the property, pursuant to RPAPL § 1354(3), which payment shall be reported in the Referee's Report of Sale.). Any surplus remaining

6

after all payments as herein provided shall be deposited into Court in accordance with RPAPL § 1354(4) and the Referee shall immediately give notice of such surplus to the owner of the mortgaged premises as identified by plaintiff at the time of the sale, and it is further

ORDERED, ADJUDGED AND DECREED that said Referee take the receipt of the plaintiff or plaintiff's attorney for the amounts paid as hereinbefore directed in item marked "FOURTH", and file it with his/her report of sale, that he/she deposit the surplus monies, if any, with the Kings County Clerk within five days after the same shall be received unless such period be deemed extended by the filing of an application for additional compensation as set forth herein, to the credit of this action, to be withdrawn only on the order of the Court, signed by a Justice of the Court; that the said referee make his/her Report of such Sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the persons to whom payments was made and file it with the Kings County Clerk , with a copy to the Chambers of the Appointing Justice, within thirty days after completing the sale and executing the proper conveyance to the purchaser or within thirty days of the decision of the court with respect to any application for additional compensation, and it is further

ORDERED, ADJUDGED AND DECREED that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as aforesaid, the plaintiff may recover from the defendant PAMELA RODGER, the whole deficiency or so much thereof as this Court may determine to be just and equitable of the mortgaged debt remaining unsatisfied after the sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property and Proceedings Law within 90 days of the delivery of the deed by the Referee, and the amount thereof is

7

determined and awarded by an order of this Court as provided for in said action; and it is further

ORDERED, ADJUDGED AND DECREED that the purchaser or purchasers at such sale be let into possession on production of Referee's deed or deeds; and it is further

ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action and all persons claiming under any of them, after the filing of such Notice of Pendency of this action, are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every party thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that said premises is to be sold in one parcel in "as is" physical order and condition on the day of sale, subject to any state of facts that an inspection of the premises would disclose, any state of facts that an accurate survey of the premises would show; any covenants, restrictions declarations, reservations, easements, right of way and public utility agreements of records, any building and zoning ordinances of the municipality in which the mortgaged premises is located and possible violations of same, any rights of tenants or persons in possession of the subject premises, prior liens of record, except those liens address in Real Property Actions and Proceedings Law, and any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale. Risk of loss shall not pas to Purchaser until closing of title.

ORDERED, that in the Absence of the Referee, the Court may designate a Substitute Referee forthwith: and it further

ORDERED, that the Referee appointed herein is subject to the requirements of Rule 36.2(c)

8

of the Chief Judge, and if the Referee is disqualified from receiving an appointment pursuant to the provision of that Rule, the Referee shall notify the appointing Judge forthwith: and it is further

ORDERED, that a copy of the Judgment with Notice of Entry shall be served upon the designated Referee, the owner of the equity of redemption as of the date of this Order, any tenants named in this action and any other party entitled to notice within twenty days of entry and no less than thirty days prior to sale; and it is further

A description of the said mortgaged premises herein before mentioned is annexed hereto as Exhibit "A" and made a part hereof. Said property being known as 33 Vanderbilt Avenue, Brooklyn, NY.

ORDERED, that the Plaintiff shall serve a copy of the Notice of Sale upon the ~~Ex-Parte~~ Foreclosure ~~Office~~ Department at least ten (10) days) prior to the scheduled sale.

ENTER:

HON. GERARD H. ROSENBERG

J.S.C.

Amy T Sander
Clerk

FEE

KINGS COUNTY CLERK
2009 APR -9 PM 3: 15
FILED

9

## SCHEDULE A
## LEGAL DESCRIPTION OF PREMISES

### 33 Vanderbilt Avenue, Brooklyn, NY

### BLOCK 1872 LOT 9 on the Tax Map of the Borough of Brooklyn

ALL THAT CERTAIN PLOT, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Easterly side of Vanderbilt Avenue distant 227 feet 9 inches Northerly from the Northeasterly corner of Vanderbilt and Park Avenues;

RUNNING THENCE Easterly at right angles to Vanderbilt Avenue and part of the distance through the center of the party wall 100 feet;

THENCE Northerly parallel with Vanderbilt Avenue 20 feet 2 inches;

THENCE Westerly again at right angles to Vanderbilt Avenue and part of the distance through another party wall 100 feet to the Easterly side of Vanderbilt Avenue;

THENCE Southerly along the Easterly side of Vanderbilt Avenue 20 feet 2 inches to the point or place of BEGINNING.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------X
EMIDEO TENTEROMANO and
FRANK TENTEROMANO ,
             Plaintiff,

*463 /2007*

Index No. 25119/2006

OATH AND REPORT

- against –

PAMELA RODGERS, NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD,
and NEW YORK CITY PARKING
VIOLATIONS BUREAU
               Defendant
----------------------------------------X
STATE OF NEW YORK    )
                    ) ss.:
COUNTY OF KINGS    )

      I, ALAN J. FIRESTONE, the Referee appointed by an Order of this Court, made and entered in the above entitled action, to ascertain and compute the amount due to the plaintiff, swear that I will faithfully and fairly determine the questions so referred to me and make a just and true report thereon according to the best of my understanding.

Sworn to before me this ___17___ day of May, 2008

_Lorraine Galli_
Notary Public

LORRAINE GALLI
Notary Public, State of New York
No. 24-4820046
Qualified in Kings County
Commission Expires June 30 _2010_

Alan J. Firestone, Referee

TO THE HONORABLE SUPREME COURT OF THE STATE OF NEW YORK:

In pursuance of an Order of this Court, made and entered in the above-entitled action and dated April 4, 2008, whereby it was referred to the undersigned as Referee to ascertain and compute the amount due to the plaintiff upon and by virtue of the note and mortgage upon which this action was brought.

I, Alan J. Firestone, the Referee in the said Order named, do report that before proceeding I was first duly sworn faithfully and fairly to determine the questions referred to me, and do make a just and true report thereon, according to the best of my understanding; that I have computed and ascertained the amount due to the plaintiff upon and by virtue of the said notes and mortgages, and that I find, and accordingly report, that there is due to the plaintiff for principal, interest and advances on the said notes and mortgages as of May 1, 2008, the sum of $536,491.88. I have made inquiry as to the advisability of selling the mortgaged premises in parcels and find and report that the same should be sold in one parcel;

1

Schedule "A" hereunto annexed, contains an abstract of the documentary evidence introduced before me, and shows the amounts due for principal, interest, and advances respectively, the period of the computation of the interest and its rate.

Dated: May 17 2008

_____

Alan J, Firestone, Referee

## S C H E D U L E   A

| | |
|---|---|
| Principal | $400,000.00 |
| Interest due from 09/06/04 through 02/06/05 | $   1,000.00 |
| Late Charges from 09/06/04 through 02/06/05 | $      240.00 |
| Interest due from 02/06/05 through 05/1/08 | $135,251.88 |
| **Total** | **$ 536,491.88** |

Dated: May  17  2008

_____
Alan J, Firestone, Referee

3

## ABSTRACT OF DOCUMENTARY EVIDENCE :

Affidavit of Frank Tenteromano sworn to May , 2008
MARKED EXHIBIT "A"

One MORTGAGE dated August 6, 2004, made and executed by PAMELA RODGERS to
EMIDEO TENTEROMANO & CONCETTA TENTEROMANO to secure the payment of
the sum of FOUR HUNDRED THOUSAND AND 00/100 DOLLARS, with interest at the
rate as contained therein and filed in the Office of the City Register of the County of Kings
as CRFN. 2004000532099
MARKED EXHIBIT "B"

One ASSIGNMENT OF MORTGAGE dated October 21, 2006, from EMIDEO
TENTEROMANO and CONCETTA TENTEROMANO to EMIDEO TENTEROMANO &
FRANK TENTEROMANO and filed in the Office of the City Register of the County of
Kings as CRFN. 2006000658611
MARKED EXHIBIT "C"

One MORTGAGE NOTE dated August 6, 2004, made and executed by PAMELA
RODGERS to EMIDEO TENTEROMANO & CONCETTA TENTEROMANO to secure
the payment of the sum of Four Hundred Thousand and 00/100 Dollars with interest at the
rate as contained therein.
MARKED EXHIBIT "D"

Dated: May 17 2008

_____
Alan J, Firestone, Referee

4

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------X
EMIDEO TENTEROMANO and
FRANK TENTEROMANO ,

             Plaintiff,          Index No. 25119/2006
- against –                    AFFIDAVIT

PAMELA RODGERS, et al
              Defendant
----------------------------------------X

STATE OF NEW YORK ) COUNTY OF NEW YORK) ss.:

FRANK TENTEROMANO, being duly sworn, deposes and says:

1. I am plaintiff herein, and have personal knowledge of the facts and circumstances set forth herein with respect to the mortgage being foreclosed.

2. This mortgage matured on February 6, 2005. The outstanding principal balance due on the mortgage is $400,000. At the time of maturity, there were interest arrears of $1,000.

3. On maturity, pursuant to paragraph 6 of the Rider in the Mortgage, the interest rate became 16% per annum. Partial payments were made and applied. Interest at the post maturity rate of 16.00% per annum from February 6, 2005 through May 1, 2008 is $207,251.88, which, less $72,000 in partial payments, sums to $135,251.88 in post-maturity interest arrears.

4. Since the commencement of this action, no principal payments have been made on the subject mortgage by the owner of the equity of redemption, or by anyone else on its behalf. Therefore, the outstanding principal balance due on the mortgage as herein above set forth has not been reduced from the amount alleged in the complaint in this action, and remains at $400,000.

5. Pursuant to paragraph 5 of the Rider in the Mortgage, pre-maturity late charges are due in the amount of $240.

6. Pursuant to the terms of the mortgage, plaintiff is entitled to recover legal fees, costs and expenses and disbursements, and that said amounts may be added to the judgment. It is therefore requested that such attorneys fees, costs, expenses and disbursements be awarded by the Court and added to the judgment of foreclosure and sale.

7. In recapitulation, the total of the amounts are set forth as follows:

| | |
|---|---|
| Principal | $400,000.00 |
| Interest due from 09/06/04 through 02/06/05 (Interest on $400,000.00 @ 12% amounts to $24,000.00 minus interest paid of $23,000.00 ($133.33 per diem)) | $ 1,000.00 |
| Late Charges from 09/06/04 through 02/06/05 | $ 240.00 |
| Interest due from 02/06/05 through 05/1/0% (Interest on $400,000.00 @ 16% amounts to $64,000 or 175.34 per diem, times 1182 days = 207,251.88 minus interest paid of $72,000.00 | $135,251.88 |
| **Total** | **$ 536,491.88** |

7. The property is single building on a single lot and may only be sold in one parcel.

Frank Tenteromano

Sworn to before me this 6th day of May, 2008.

_____
Notary Public

DAN M. RICE
Notary Public, State of New York
No. 31-4772595
Qualified in New York County
Commission Expires Dec. 31, 2000 2010

**Exhibit B**

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2004081102413002001E4C4D

### RECORDING AND ENDORSEMENT COVER PAGE

| | | PAGE 1 OF 10 |
|---|---|---|
| Document ID: 2004081102413002 | Document Date: 08-06-2004 | |
| Document Type: MORTGAGE | | Preparation Date: 08-11-2004 |
| Document Page Count: 8 | | |

**PRESENTER:**

C & G LAND ABSTRACT, LLC
STEWART TITLE INS. CO.
21 WALT WHITMAN ROAD
HUNTINGTON STATION, NY 11746
631-424-2300
76438K

**RETURN TO:**

SANTO D SGARLATO ESQ
PROFESSIONAL BUILDING
332A NINTH STREET
BROOKLYN, NY 11215


*ORIGINAL*
*COPY*

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 1872 | 9 | Entire Lot | | 33 VANDERBILT AVE |

Property Type: 1-2 FAM WITH ATTCH GAR /OR VACANT LAND

### CROSS REFERENCE DATA

CRFN _____ or Document ID_____ or _____ Year _____ Reel _____ Page _____ or File Number_____

### PARTIES

**MORTGAGER/BORROWER:**

PAMELA RODGERS
572 WESTMINISTER ROAD APT 7
BROOKLYN, NY 11230

x  Additional Parties Listed on Continuation Page

**MORTGAGEE/LENDER:**

EMIDEO TENTEROMANO
315 7 STREET
BROOKLYN, NY 11215

### FEES AND TAXES

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 400,000.00 | |
| Taxable Mortgage Amount: | $ | 400,000.00 | |
| Exemption: | | | |
| TAXES: County (Basic): | $ | 2,000.00 | |
| City (Additional): | $ | 4,000.00 | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | | |
| MTA: | $ | 1,000.00 | |
| NYCTA: | $ | 975.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| | $ | 7,975.00 | |

| | |
|---|---|
| Recording Fee: $ | 77.00 |
| Affidavit Fee:  $ | 0.00 |

NYC Real Property Transfer Tax Filing Fee:
$ 0.00

NYS Real Estate Transfer Tax:
$ 0.00

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed  08-26-2004 14:06
City Register File No.(CRFN):
2004000532099

*Rochelle Patrice*

**City Register Official Signature**

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER



2004081102413002001C4ECD

Document ID: 2004081102413002          Document Date: 08-06-2004          Preparation Date: 08-11-2004
Document Type: MORTGAGE

PARTIES
MORTGAGEE/LENDER:
CONCETTA TENTEROMANO
315 7 STREET
BROOKLYN, NY 11215

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

*MT # 7975 00*                                        *76438K*

**THIS MORTGAGE**, made the   6th   day of   AUGUST   2004 .

**BETWEEN**

PAMELA RODGERS, residing at 572 Westminster Road, Apt. #7, Brooklyn,
New York 11230,

and                                                            , the mortgagor,

EMIDEO TENTEROMANO & CONCETTA TENTEROMANO, his wife, both residing
at 315 7th Street, Brooklyn, New York 11215

                                                               , the mortgagee,

**WITNESSETH**, that to secure the payment of an indebtedness in the sum of  Four Hundred
Thousand and 00/100---------($400,000.00)---------------------dollars,
lawful money of the United States, to be paid

with interest thereon to be computed from the date hereof, at the rate of  TWELVE (12%)-- per centum
per annum, and to be paid on the  6th  day of  September  . 2004   , next ensuing and
monthly  thereafter, until the 6th day of February 2005, when balance
due shall be paid in full.

                                                    according to a certain bond,
note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,
lying and being in the  Borough of Brooklyn, County of Kings, City and State of
New York, bounded and described as follows:

BEGINNING at a point on the EASTERLY side of VANDERBILT AVENUE distant
227 feet 9 inches NORTHERLY from the NORTHWESTERLY corner of
VANDERBILT and PARK AVENUE;

RUNNING THENCE EASTERLY at right angles to VANDERBILT AVENUE and part
of the distance through the center of the party wall 100 feet;

THENCE NORTHERLY parallel with VANDERBILT AVENUE 20 feet 2 inches;

THENCE WESTERLY again at right angles to VANDERBILT AVENUE and part
of the distance through another party wall 100 feet to the
EASTERLY SIDE of VANDERBILT AVENUE;

THENCE SOUTHERLY along the EASTERLY side of VANDERBILT AVENUE 20 feet
2 inches to the point or place of BEGINNING.

SAID PREMISES BEING KNOWN AS AND BY: 33 Vanderbilt Avenue, Brooklyn, NY

*B*
*1872*

*L/*
*9*

                              the within descibed premises are improved
                              with a structure containing six residential
                              units or less, each dwelling unit having it's
                              own seperate cooking facilities.

TOGETHER with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises;

TOGETHER with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto;

TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

AND the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premiums paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies.

3. That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee.

4. That the whole of said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any installment of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in installments at the application of the mortgagor or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first installment becomes due or payable or a lien.

5. That the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the mortgagee may pay the same.

7. That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

8. That notice and demand or request may be in writing and may be served in person or by mail.

9. That the mortgagor warrants the title to the premises.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the mortgagor, within thirty days after notice and demand, will keep the premises insured against war risk and any other hazard that may reasonably be required by the mortgagee. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of six per cent per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

13. That the mortgagor hereby assigns to the mortgagee the rents, issues and profits of the premises as further security for the payment of said indebtedness, and the mortgagor grants to the mortgagee the right to enter upon and to take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid. The mortgagee hereby waives the right to enter upon and to take possession of said premises for the purpose of collecting said rents, issues and profits, and the mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage, and agrees to use such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said premises, but such right of the mortgagor may be revoked by the mortgagee upon any default, on five days' written notice. The mortgagor will not, without the written consent of the mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a period of more than one month in advance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof as may be in the possession of the mortgagor, and upon default in any such payment will vacate and surrender the possession of said premises to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest shall become due at the option of the mortgagee: (a) after failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the mortgagor, in the event of the passage of any law deducting from the value of the land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage.

15. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

16. That the execution of this mortgage has been duly authorized by the board of directors of the mortgagor.

*Strike out this clause 16 if inapplicable.*

This mortgage may not be changed or terminated orally. The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall enure to the benefit of the mortgagee, the personal representatives, successors and assigns of the mortgagee and all subsequent holders of this mortgage. The word "mortgagor" shall be construed as if it read "mortgagors" and the word "mortgagee" shall be construed as if it read "mortgagees" whenever the sense of this mortgage so requires.

IN WITNESS WHEREOF, this mortgage has been duly executed by the mortgagor.

IN PRESENCE OF:

_Pamela Rodgers_

**Amount Due as of August 11, 2009 Petition Date**

| | |
|---|---|
| Computations as of 5/01/08(Referee's Report) | $ 536,491.88 |
| Interest on principal($400,000.00) from 5/01/08 @ 16% to 04/09/09(entry) | 60,014.62 |
| Int on judgment($536,491.88(132.38PD)from04/10/09)@ 9% - 08/11/09) | 16,412.92 |
| Costs and Disbursement | 1,240.00 |
| special allowance | 300.00 |
| Awarded Attorney's Fees | 1,500.00 |
| Referee's Fee | 500.00 |
| Advertising | 3,700.00 |
| **Amount Due Under Judgement as of 8/11/09** | **$ 620,159.42** |